| Fill in this information to identify the case: |
|---|
| Debtor: Lisa M. Wardwell |
| United States Bankruptcy Court for the District of Maine |
| Case Number: 23-10174 |

**Plan of Reorganization for Small Business Under Chapter 11**

Lisa M. Wardwell's Plan of Reorganization dated December 11, 2023.

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

Lisa M. Wardwell (the "Debtor") is an individual residing in Augusta, Maine. Beginning in 2014, the Debtor owned and operated a restaurant in China, Maine. Factors related to the COVID-19 pandemic ultimately led to the closure and forced liquidation of that business. The debts from that business were not fully satisfied as part of the sale process and creditors actively pursued the Debtor for her personal guarantees. The collection activity and substantial amount of debt has hampered the Debtor's ability to move forward. At the time of the filing of this case, the Debtor was successfully operating three other unrelated businesses: a restaurant, which she has operated since 2005; a catering company, which she has operated since 2017; and a real estate holding company, which she has owned since 2011. These businesses have enabled the Debtor to move forward and provide her with sufficient income to address the outstanding business debts giving her the fresh start she is seeking.

### B. Liquidation Analysis

To confirm the Plan of Reorganization (the "Plan"), the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The liquidation analysis requires that the Debtor pay at least $51,634.17. A liquidation analysis is attached to the Plan as Exhibit 1. The Plan provides that she will pay a total of $63,000.00 to administrative claimants and general unsecured creditors.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that she will have enough cash over the life of the Plan to make the required Plan payments and operate without further reorganization.

The Plan Proponent has provided projected financial information as detailed in the Amended Schedules I and J and business budgets filed together with this Plan and marked as Exhibit 2.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $63,000.00 (or $1,000.00 per month).

The final Plan payment is expected to be paid on or before the date that is five (5) years after the Effective Date of this Plan.

The Debtor will have sufficient disposable income to fund this Plan and fully satisfy her creditors' allowed priority claims, allowed secured claims and allowed nonpriority unsecured claims as further set forth in this Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan filed under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from what is referred to herein as "Plan Cash." During the pendency of the Plan, the Debtor shall make periodic payments into Debtor's Counsel's Chapter 11 Account totaling $63,000.00 (the "Plan Cash"). Such funds shall be distributed to creditors in an initial distribution (the "Initial Distribution") and five (5) annual distributions, as shown in Exhibit 3 attached hereto. The Initial Distribution will pay the anticipated allowed fees of the Subchapter V Trustee and shall be made by the Effective Date of this Plan or such time as the aforementioned fees become an allowed claim. The Debtor shall file and serve a Notice of Substantial Consummation not later than 14 days following the Initial Distribution.

This Plan provides for:
        0 classes of priority claims;
        3 classes of secured claims;
        2 class of non-priority unsecured claims; and
        1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 13.56%. This Plan also provides for payment of administrative claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2:  Classification of Claims and Interests**

2.01    Class 1:  The secured claim of Bangor Savings Bank.

2.02    Class 2: The secured claims of Toyota Financial Services and Kennebec Savings Bank.

2.03    Class 3: The secured claim of Citizens Bank N.A.

2.04    Class 4: The unsecured claims of Central Maine Power (Schedule E/F, line 4.4 claim, in the amount $2,782.79), Consolidated Communications (Schedule E/F, line 4.6, in the amount $504.86), NorthCenter PFG (Schedule E/F, line 4.9, in the amount $631.56), NorthCenter PFG (Schedule E/F, line 4.10, in the amount $819.60), and David & Sheree Southmayd (Schedule E/F, line 4.7, in the amount $302,174.18).

2.05    Class 5:  All other non-priority unsecured claims allowed under §502 of the Code.

2.06    Class 6:  The interests of the individual Debtor in property of the estate.

**Article 3:  Administrative Expense Claims**

3.01    Unclassified claims:  Under §1123(a)(1) of the Code, administrative expense claims and priority tax claims are not in classes.

3.02    Administrative expense claims:  Administrative expense claims including, without limitation, professional fees and expenses and the Subchapter V Trustee claim are unimpaired. All Administrative Claims shall be paid in full, unless payment terms are subject to a separate Order of the Court: (a) on the later of the Effective Date or the date on which each such Claim becomes and Allowed Claim; or (b) in accordance with such terms as may be agreed upon by the Debtor and each holder of an Administrative Claim. on the effective date of the Plan or upon such other terms as may be agreed up

3.03    Priority tax claims:  Each holder of a priority tax claim pursuant to §507(a)(8) of the Code will be paid the total value of their respective Priority Unsecured Claim consistent with §1129(a)(9)(C) of the Code.

**Article 4:  Treatment of Claims and Interests Under the Plan**

4.01    Claims and interest shall be treated as follows under this Plan:

Class 1 secured claim of Bangor Savings Bank is unimpaired.  Bangor Savings Bank has a judgment lien on the Debtor's vehicles for a total secured claim amount of $20,507.  To the extent Bangor Savings Bank receives any funds from Liberty Mutual on account of the Toyota Rav4 that was declared a total loss post-petition, the secured claim shall be

reduced by the amount received. The secured claim will be paid upon transfer of the collateral or as the parties may otherwise agree. The balance of the claim shall be treated as an Allowed Unsecured Claim in Class 4 and as further detailed in this Plan. Bangor Savings Bank retains its pre-petition lien on the Debtor's vehicles for which it had a lien on the petition date until the claim is paid in full.

Class 2 secured claims of Toyota Financial Services and Kennebec Savings Bank are unimpaired. Both claims have been paid in full after the petition date and shall receive no further payments from the Debtor or under the Plan. Toyota Financial Services was paid in full by the Debtor's insurance company as a result of an accident. Kennebec Savings Bank was paid in full from the money it held to secure its debt. The balance held by Kennebec Savings Bank in the approximate amount of $240 was refunded to the Debtor.

Class 3 secured claim of Citizens Bank N.A. is unimpaired. The terms of the Citizens Bank N.A. claim (see Proof of Claim 2) are not modified by the Plan. The shall be no payments to Citizens Bank N.A. from Plan Cash.

Class 4 unsecured claims of Central Maine Power (Schedule E/F, line 4.4 claim, in the amount $2,782.79), Consolidated Communications (Schedule E/F, line 4.6, in the amount $504.86), NorthCenter PFG (Schedule E/F, line 4.9, in the amount $631.56), NorthCenter PFG (Schedule E/F, line 4.10, in the amount $819.60), and David & Sheree Southmayd (Schedule E/F, line 4.7, in the amount $302,174.18) are impaired. The claims in Class 3 are performing debts of the current businesses (see Schedule H). The businesses are and shall continue to be obligated and pay these claims in the ordinary course. The claims shall not receive a dividend under the Plan or from Plan Cash. Upon the entry of the discharge in this case, the Debtor's personal obligation and guarantee of the Class 3 claims is discharged.

Class 5 claims of non-priority unsecured creditors are impaired. Holders of Allowed Unsecured Claims will receive pro rata distributions from Plan Cash after payment of Counsel Fees as estimated in Exhibit 3 of this Plan attached hereto.

Class 6 claim includes the interest of the individual Debtor in property of the estate and is unimpaired. The Debtor is not taking a distribution under this Plan. Upon entry of the Confirmation Order, all property of the Debtor shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent provided in this Plan.

**Article 5:  Allowance and Disallowance of Claims**

5.01   Disputed Claim:   A disputed claim is a claim that has not been allowed or disallowed and as to which either:

    (i)    a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

Lisa M. WardwellCase No. 23-10174

(ii)    no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of distribution on a disputed claim:    No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03   Settlement of disputed claims:    The Debtor will have the power and authority to settle and compromise a dispute claim with court approval and compliance with Rule 9010 of the Federal Rules of Bankruptcy Procedure.

**Article 6:  Provisions for Executory Contracts and Unexpired Leases**

6.01   Assumed executory contracts and unexpired leases:  The Debtor assumes the following executory contracts and unexpired leases as of the effective date: N/A.

6.02   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Section 6.01 of this Plan, or that are subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

**Article 7:  Means for Implementation of the Plan**

The Debtor shall have adequate means for implementation of this Plan pursuant to § 1123(a)(5) of the Code by (a) income earned by the Debtor from her employment, for which the Debtor shall receive an average monthly wages and draw from the business(es) of $1,940.67, giving the Debtor a net monthly income after paying her reasonably necessary monthly expense of $1,000.00; and (b) any other funds generated or received by the Debtor and not allocated or paid pursuant to this Plan that my become available. Upon entry of the Confirmation Order, all property of the Debtor's estate shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent provided in this Plan, pursuant to § 1141(b) of the Code.

**Article 8:  General Provisions**

8.01   Definitions and rules of construction: The definitions and rules of construction set for in §101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:  N/A

8.02   Effective date:  The effective date of this Plan is the first business following the

date that is 7 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after on which the stay expires or is otherwise terminated.

8.03   Severability: If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   Binding effect: The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05   Captions: The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   Controlling effect: Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maine govern this Plan and any agreements, documents, and instruments execution in connection with this Plan, except as otherwise provided in this Plan.

8.08   Retention of jurisdiction: To the maximum extent permitted by applicable law, the Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

   (a) to consider and approve any amendment, modification or correction of the Plan, subject to the restrictions set forth in Bankruptcy Code Section 1193 and any modification of the Confirmation Order;

   (b) to hear and determine all Fee Claims and all objections filed by the Debtor with respect to Claims other than Fee Claims;

   (c) to hear and determine all adversary proceedings, contested matters, or other actions commenced in the Bankruptcy Court by the Debtor against any party and pertaining to any matter, including, without limitation, proceedings for recovery of assets or avoidance of obligations or liens under Sections 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code, proceedings relating to the assumption or rejection of Executory Contracts and Unexpired Leases, and proceedings relating to the enforcement by any creditor of any remedy against the Debtor;

   (d) to hear and determine any disputes arising under the Plan, its implementation and the execution of any necessary documents thereunder;

   (e) to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

   (f) to enforce all injunctions and stays granted under this Plan or the Bankruptcy

    Code, and to enforce the discharge provisions of the Bankruptcy Code and the Plan; and,

    (g) to make such Orders as are necessary and appropriate to carry out and implement the provisions of the Plan.

8.09 Undeliverable Distributions.  If payment or distribution on an Allowed Claim under the Plan is returned for lack of a current address, the Debtor shall make reasonable efforts to find a current address and reissue payment on the Allowed Claim.  If the payment or distribution is returned a second time, no further payment or distribution shall be made on the Allowed Claim and the Allowed Claim shall be deemed satisfied and discharged to the same extent as if payment or distribution had been received.  The funds originally allocated for any undeliverable payment as set forth in this paragraph shall be distributed to the remaining Allowed Claims in the respective creditor Class.

8.10 Time Bar to Cash Payments.  Checks issued by the Debtor pursuant to this Plan will be null and void if not cashed within 90 days of the date of their issuance.  Requests for reissuance of any check shall be made to the Debtor by the holder of the Allowed Claim.  Any request for reissuance must be made on or before six (6) months after the original date of issuance of the check.  After that date, any Claim related to the void checks shall be deemed satisfied and discharged to the same extent as if payment had been received.  The funds originally allocated on the Allowed Claim for which payment is time barred as set forth in this paragraph shall be distributed to the remaining Allowed Claims in the respective creditor Class.

8.11 Direct Payments.  Notwithstanding the provisions of § 1194(b) of the Code, and in the absence of an Order to the contrary, all payments under the Plan shall be made directly by the Debtor.

**Article 9:  Discharge**

9.01 Discharge of the individual Debtor under Subchapter V

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (a) imposed by this Plan; or

    (b) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this  Plan until the court grants a discharge on

completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(a) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(b) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

**10.01 Any and all holders of allowed claims or interests that this Plan places in a Class or Classes that is/are impaired under this Plan that do not accept or reject this Plan on or before the date fixed by the Court shall be deemed to have accepted this Plan pursuant to § 1126 of the Code.**

*Remainder of page intentionally blank*

Dated:  December 11, 2023           /s/ *Lisa M. Wardwell*
                                                         Lisa M. Wardwell


Dated:  December 11, 2023           /s/  *Tanya Sambatakos*
                                                         Tanya Sambatakos, Esq.
                                                         Molleur Law Office
                                                         190 Main St., 3rd Fl
                                                         Saco, ME 04072
                                                         (207) 283-3777
                                                         tanya@molleurlaw.com